IN THE UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| IN RE: | CASE NO. 13-68985-mgd |
| GREGORY LAMAR ALMOND, | CHAPTER:  13 |
| Debtor. | JUDGE:  MARY GRACE DIEHL |
| THE BANK OF NEW YORK MELLON, FKA THE BANK OF NEW YORK, AS SUCCESSOR TRUSTEE TO JP MORGAN CHASE BANK, N.A. AS TRUSTEE, FKA BANK ONE, NATIONAL ASSOCIATION, AS TRUSTEE FOR BEAR STEARNS ASSET BACKED SECURITIES TRUST 2002-2, ASSET BACKED CERTIFICATES,SERIES 2002-2, | CONTESTED MATTER |
| Movant, | |
| v. | |
| GREGORY LAMAR ALMOND, Debtor JOCELYN ALMOND, Co-Debtor MARY IDA TOWNSON, Trustee, | |
| Respondent(s). | |

**NOTICE OF HEARING**

**PLEASE TAKE NOTICE** that the Movant named above has filed a Motion for Relief from the Automatic Stay and the Co-Debtor Stay, as well as related papers with the Court seeking an Order Granting Relief from the Automatic Stay and the Co-Debtor Stay.

**PLEASE TAKE FURTHER NOTICE** that the Court will hold a hearing on the Motion in Courtroom 1201, United States Courthouse, 75 Ted Turner Drive SW, Atlanta, GA 30303, at 2:00 p.m. on October 5, 2016.

**NOTICE TO CO-DEBTOR:**  This Motion seeks relief from the co-debtor stay pursuant to 11 USC Section 1301.  If you do not file and serve a written objection to this Motion within 20 days from the date this Motion was filed, the Motion may be granted and the co-debtor stay may be terminated.  Objections shall be filed with the Clerk, U.S. Bankruptcy Court, at the address shown in the next paragraph, and shall be served by U.S. Mail on the undersigned attorney whose name and address appear at the end of this notice.

**NOTICE TO DEBTOR:** Your rights may be affected by the Court's ruling on these pleadings. You should read these pleadings carefully and discuss them with your attorney, if you have one in this bankruptcy case. (If you do not have an attorney, you may wish to consult one.) If you do not want the Court to grant the relief sought in these pleadings, or if you want the Court to consider your views, then you and/or your attorney must attend the hearing. You may also file a written response to the pleading with the Clerk at the address stated below, but you are not required to do so. If you file a written response, you must attach a certificate stating when, how, and on whom (including addresses) you served the response. Mail or deliver your response so that it is received by the Clerk at least two business days before the hearing. The address of the Clerk's Office is: Clerk, U.S. Bankruptcy Court, 75 Ted Turner Drive SW, Room 1340, Atlanta, GA 30303. You must also mail a copy of your response to the undersigned at the address stated below.

If a hearing on the motion for relief from the automatic stay cannot be held within thirty (30) days, Movant waives the requirement for holding a preliminary hearing within thirty days of filing the motion and agrees to a hearing on the earliest possible date. If a final decision cannot be rendered by the Court within sixty (60) days of the date of the request, Movant waives the requirement that a final decision be issued within that period. Movant consents to the automatic stay remaining in effect until the Court orders otherwise.

/s/ Brian K. Jordan
Brian K. Jordan, Bar No.: 113008
Attorney for Movant
Aldridge Pite, LLP
Fifteen Piedmont Center
3575 Piedmont Road, N.E., Suite 500
Atlanta, GA 30305
Phone: (404) 994-7400
Fax: (888) 873-6147
Email: bjordan@aldridgepite.com

IN THE UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| IN RE: | CASE NO. 13-68985-mgd |
| GREGORY LAMAR ALMOND, | CHAPTER: 13 |
| Debtor. | JUDGE: MARY GRACE DIEHL |
| THE BANK OF NEW YORK MELLON, FKA THE BANK OF NEW YORK, AS SUCCESSOR TRUSTEE TO JP MORGAN CHASE BANK, N.A. AS TRUSTEE, FKA BANK ONE, NATIONAL ASSOCIATION, AS TRUSTEE FOR BEAR STEARNS ASSET BACKED SECURITIES TRUST 2002-2, ASSET BACKED CERTIFICATES, SERIES 2002-2, | CONTESTED MATTER |
| Movant, | |
| v. | |
| GREGORY LAMAR ALMOND, Debtor JOCELYN ALMOND, Co-Debtor MARY IDA TOWNSON, Trustee, | |
| Respondent(s). | |

MOTION FOR RELIEF FROM THE AUTOMATIC STAY
AND THE CO-DEBTOR STAY

COMES NOW Movant named above and shows this Court the following:

1.    This Motion is made pursuant to Section 362(d) of the Bankruptcy Code for relief from the automatic stay and pursuant to Section 1301(c) of the Bankruptcy Code for relief from the co-debtor stay, for all purposes allowed by law and the contract between the parties, including, but not limited to, the right to foreclose on certain real property by a private power of sale contained in a certain Deed to Secure Debt.

2.    Movant is the holder or the servicer of a loan secured by certain real property in

which the Debtor has an interest. Said real property is security for a Promissory Note, and is commonly known as 9914 Scarlet Oak Drive, Douglasville, GA 30135.

3.      There has been a default in mortgage payments which have come due since this case was filed. As of July 29, 2016, thirty five (35) post petition payments have been missed. Additionally, this loan has matured under the terms of the loan documents and the confirmed Plan does not provide for the total debt.

4.      The unpaid principal balance is $62,386.33, and interest is due thereon in accordance with the Promissory Note.

5.      Because of the default and clear inability to make all required payments, Movant is not adequately protected. Movant's interest would also be irreparably harmed by the continuation of the co-debtor stay.

6.      Movant requests that in the event the Motion is granted, the Trustee be ordered to cease funding any balance of Movant's claim and that Fed. R. Bank. P. 3002.1 be held not to apply to Movant, its successors and/or assigns, as Movant's claim would not be provided for in the Plan pursuant to Section 1322(b)(5) of the Code.

7.      Movant requests that the provisions of Fed. R. Bankr. P 4001(a)(3) be waived.

8.      JPMorgan Chase Bank, N.A., services the loan on the property referenced in this Motion for Relief. In the event the automatic stay in this case is lifted/set aside, this case dismisses, and/or the debtor obtains a discharge and a foreclosure action is commenced on the mortgaged property, the foreclosure will be conducted in the name of The Bank of New York Mellon, FKA The Bank of New York, as successor Trustee to JP Morgan Chase Bank, N.A. as Trustee, FKA Bank One, National Association, as Trustee for Bear Stearns Asset Backed Securities Trust 2002-2, Asset Backed Certificates, Series 2002-2. Said entity, directly or

through an agent, has possession of the promissory note. The promissory note is either made payable to said entity or has been duly endorsed.

WHEREFORE, Movant prays for an Order lifting the automatic stay and co-debtor stay, authorizing it to proceed with the exercise of its private power of sale and to foreclosure under its Loan Documents and appropriate state statutes. Movant also prays that Fed. R. Bankr. P. 3002.1 be held not applicable in accordance with the request hereinbefore, that Fed. R. Bankr. P. 4001(a)(3) be waived. Movant also prays that the Chapter 13 Trustee make no further payments on account of Movant's secured claim, that Movant be permitted to contact the Debtor or Debtor's Counsel, as appropriate, through its agents, servicers and representatives for the purpose of engaging in discussions and consideration for possible loss mitigation options, and for such other and further relief as is just and equitable.

/s/ Brian K. Jordan
Brian K. Jordan, Bar No.: 113008
Attorney for Movant
Aldridge Pite, LLP
Fifteen Piedmont Center
3575 Piedmont Road, N.E., Suite 500
Atlanta, GA 30305
Phone: (404) 994-7400
Fax: (888) 873-6147
Email: bjordan@aldridgepite.com

IN THE UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

IN RE:

GREGORY LAMAR ALMOND,

Debtor.

CASE NO. 13-68985-mgd

CHAPTER: 13

JUDGE: MARY GRACE DIEHL

## SUPPLEMENTAL DECLARATION IN SUPPORT OF
## MOTION FOR RELIEF FROM AUTOMATIC STAY

I, _Amanda Schteich_, declare under penalty of perjury as follows:

1.      This supplemental declaration is provided in support of the Motion for Relief from Stay (the "Motion") filed contemporaneously herewith.

2.      I am a/an _Vice President_ of JPMorgan Chase Bank, National Association ("Chase") and am authorized to sign this supplemental declaration on behalf of Chase as servicing agent for The Bank of New York Mellon, FKA The Bank of New York, as successor Trustee to JP Morgan Chase Bank, N.A. as Trustee, FKA Bank One, National Association, as Trustee for Bear Stearns Asset Backed Securities Trust 2002-2, Asset Backed Certificates, Series 2002-2. In this position, I have access to the business records of Chase, and my responsibilities include ascertaining and verifying amounts due and payable as to delinquent bankruptcy accounts.

3.      The facts stated in this declaration are based upon information that I obtained by reviewing records maintained in the ordinary course of Chase's business, as part of regularly conducted business activity, by or from information transmitted by person(s) with knowledge of the events described therein, at or near the time of the event described.

Case No.: 13-68985-mgd

Case# 13-68985-mgd

4.      Greg Almond and Jocelyn Almond ("Borrowers") executed a note dated February 8, 1995 in favor of Sunshine Mortgage Corporation, in the original principal sum of $69,300.00 (the "Note").

5.      The Note is secured by a deed to secure debt encumbering certain real property commonly known as 9914 Scarlet Oak Drive, Douglasville, GA 30135.

6.      The Movant's agent has possession of the original promissory note, and the note is endorsed in blank.

7.      As of July 29, 2016, the Borrowers failed to make one or more post-petition payments with respect to this loan.

8.      The unpaid principal balance of this loan as of July 29, 2016 is $62,386.33.

9.      The following chart sets forth those post-petition payments that the Borrowers failed to make with respect to this loan as of July 29, 2016:

| Number of Missed Payments | From | To | Principal and Interest | Escrow (if applicable) | Monthly Payment Amount | Total Amounts |
|---|---|---|---|---|---|---|
| 4 | 9/13/2013 | 12/13/2013 | $834.85 | $233.69 | $1,068.54 | $4,274.16 |
| 12 | 1/13/2014 | 12/13/2014 | $834.85 | $244.52 | $1,079.37 | $12,952.44 |
| 12 | 1/13/2015 | 12/13/2015 | $834.85 | $244.46 | $1,079.31 | $12,951.72 |
| 7 | 1/13/2016 | 7/13/2016 | $834.85 | $297.54 | $1,132.39 | $7,926.73 |
| Less post-petition partial payments (suspense balance): | | | | | | $(259.20) |

**Total:**   $37,845.85

In addition, monthly payment obligations will continue to accrue under the terms of the note.

Case No.: 13-68985-mgd

CaSe # 13-08985-mgd

10.     As of July 29, 2016, the total post-petition arrearage/delinquency needed to cure the post-petition default is $37,845.85, consisting of (i) the foregoing total of missed post-petition payments in the amount of $37,845.85, plus (ii) the following post-petition fees:

| Description | Amount |
|---|---|
| N/A | $0.00 |

11.     Attached hereto as Exhibit A is a postpetition payment history.

I hereby declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed this 25th day of August 2016.

Name: Amanda Schleich

Title: Vice President    JPMorgan Chase Bank, N.A.,

8/25/16

Case # 13- 68985-mgd

EXHIBIT A

JPMorgan Chase Bank, N.A.

Post   Activity Ledger

EXHIBIT A

EXHIBIT A

| | |
|---|---|
| Avg Days/Month | 30.42 |
| Interest From | 2/13/2012 |
| Interest To | 7/30/2016 |
| UPB | $62,386.33 |
| Interest Rate | 14.250% |
| Number of Days | 1629.00 |
| Amount Per Day | $24.35 |
| Interest amount | $39,666.15 |
| UPB + interest | $102,052.48 |

# BALLOON NOTE



GEORGIA

THE FINAL PAYMENT UNDER THIS NOTE IS SUBSTANTIALLY GREATER THAN THE PREVIOUS PAYMENTS. YOU MUST REPAY THE ENTIRE UNPAID PRINCIPAL BALANCE OF THE LOAN AND UNPAID INTEREST THEN DUE. THE LENDER IS UNDER NO OBLIGATION TO REFINANCE THE LOAN AT THAT TIME. YOU WILL, THEREFORE, BE REQUIRED TO MAKE PAYMENT OUT OF OTHER ASSETS THAT YOU MAY OWN, OR YOU WILL HAVE TO FIND A LENDER, WHICH MAY BE THE LENDER YOU HAVE THIS LOAN WITH, WILLING TO LEND YOU THE MONEY. IF YOU REFINANCE THIS LOAN AT MATURITY, YOU MAY HAVE TO PAY SOME OR ALL OF THE CLOSING COSTS NORMALLY ASSOCIATED WITH A NEW LOAN EVEN IF YOU OBTAIN REFINANCING FROM THE SAME LENDER.

US $ 69,300.00 _____     _____ February 8, 1995 _____
                                                          Date

_____ 9914 Scarlet Oak Drive, Douglasville, GA   30135 _____
                              (Property Address)

### 1.   BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 69,300.00 _____ (this amount is called "principal"), plus interest, to the order of the Lender. The Lender is ___ Sunshine Mortgage Corporation ___
_____. I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

### 2.   INTEREST

Interest will be charged on the unpaid principal until the full amount of principal has been paid. I will pay interest at a yearly rate of __14.250__ %. Interest will be charged until the principal has been paid in full.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

### 3.   PAYMENTS

I will pay principal and interest by making payments every month. Each of my monthly payments, except for the final payment, will be in the amount of U.S. $ 834.85 _____. Assuming all scheduled payments of principal and interest are made on their due dates, the final payment will be U.S. $ 62738.34 _____

I will make my monthly payments on the __13th__ day of each month beginning on March 13 _____, 19 95 . I will make these payments every month until __February 13, 2010_____, on which date I will pay all of the remaining principal, accrued interest and any other charges, described below, that I may owe under this Note. Unless applicable law provides otherwise, all payments will be applied first to accrued and unpaid interest to the date of payment and the remainder, if any, to the unpaid principal balance. Any late charges, collection costs and expenses, dishonored check charges and payments made by the Note Holder to enforce this Note and/or to protect the Note Holder's interests under the Security Instrument (as defined in section 9) will be assessed separately.

I will make my monthly payments at P. o. Box 9274, Marietta, GA  30065 _____
_____, or at a different place if required by the Note Holder.

### 4.   BORROWER'S RIGHT TO PREPAY

I have the right to make payments of principal at any time before they are due. A payment of principal only is known as a "prepayment."

I may make a full prepayment or partial prepayments without paying any prepayment penalty. The Note Holder will use all of my prepayments to reduce the amount of principal that I owe under this Note. If I make a partial prepayment, there will be no changes in the due dates or amounts of my monthly payments unless the Note Holder agrees in writing to those changes. Except as provided in section 5, the Note Holder earns any prepaid finance charge at the time the loan is made and no part of it will be refunded if I pay in full ahead of schedule.

### 5.   LOAN CHARGES

If a law or regulation, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (i) any such interest and/or other loan charges shall be reduced by the amount necessary to reduce the interest and/or other loan charges to the permitted limit; and (ii) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the principal I owe under this Note or by making a direct payment to me. If a refund reduces principal, the reduction will be treated as a partial prepayment.

In the event I prepay this Note, either voluntarily or as a result of enforcement proceedings, I may become entitled to a refund of some of the prepaid finance charge and/or other loan charges paid by me or on my behalf to the Lender at the time of the origination of the loan evidenced by this Note. This refund will be made if, at the time of the prepayment of this Note, applicable law or regulation provides that (a) such prepaid finance charge and/or other loan charges are required to be included in the calculation of the maximum permissible periodic interest rate and/or maximum allowable loan charges, without spreading the effect of such prepaid finance charge and/or loan charges over the full original scheduled term of the loan when determining the effective periodic interest rate on the loan (the "Calculation"), and (b) the effective periodic interest rate resulting from the Calculation exceeds the maximum permissible rate.  Any such refund will be made as and to the extent provided in the first paragraph of this Section 5.

6.   BORROWER'S FAILURE TO PAY AS REQUIRED
     (A) Late Charges for Overdue Payments
     If the Note Holder has not received the full amount of any monthly payment by the end of ten (10) calendar days after the date it is due, I will pay a late charge to the Note Holder.  The amount of the charge will be five percent (5%) of my scheduled payment of principal and interest.  I will pay this late charge promptly but only once on each late payment.  Any late charge will be in addition to interest on the then outstanding principal for each day the payment is late.

     (B) Default
     If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.  If I am in default the Note Holder may require me to pay immediately the full unpaid principal balance plus accrued and unpaid interest and any other amounts I then owe under this loan.

     (C) No Waiver By Note Holder
     Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

     (D) Payment of Note Holder's Costs and Expenses
     If I default, whether or not the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law.  Those expenses include, for example, reasonable attorneys' fees in the amount of fifteen percent (15%) of the principal and interest owing on this Note or on the Security Instrument if permitted by law.  I will also pay a charge of the greater of $20 or five percent (5%) of the face amount of the check, draft or other instrument for each dishonored check, draft or other instrument issued by me in payment on this loan.

7.   GIVING OF NOTICES
     Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

     Any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3 above or at a different address if I am given a notice of that different address.

8.   MY WAIVERS
     I waive my rights to require the Note Holder to do certain things.  Those things are: (A) to demand payment of amounts due (known as "presentment"); (B) to give notice that amounts due have not been paid (known as "notice of dishonor"); (C) to obtain an official certification of nonpayment (known as a "protest").  Anyone else (i) who agrees to keep the promises made in this Note, or (ii) who agrees to make payments to the Note Holder if I fail to keep my promises under this Note, or (iii) who signs this Note to transfer it to someone else (known as "guarantors, sureties, and endorsers"), also waives these rights.

9.   THIS NOTE COVERED BY A SECURITY INSTRUMENT
     A Security Instrument of even date containing a description of my real property protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note.  This Note is secured by that Security Instrument.  That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts that I owe under this Note.

10.  RESPONSIBILITY OF PERSONS UNDER THIS NOTE
     If more than one person signs this Note, each of us is fully and personally obligated to pay the full amount owed plus the charges as described in Sections 6(A) and 6(D) and to keep all of the promises made in this Note.  Any guarantor, surety, or endorser of the Note (as described in Section 8 above) is also obligated to do these things.  The Note Holder may enforce its rights under this Note against each of us individually or against all of us together.  This means that any one of us may be required to pay all of the amounts owed under this Note.

     Any person who takes over my rights or obligations under this Note will have all of my rights and must keep all of my promises made in this Note.  Any person who takes over the rights or obligations of a guarantor, surety, or endorser of this Note (as described in Section 8 above) is also obligated to keep all of the promises made in this Note.



11.   APPLICABLE LAW

This Note shall be governed by the laws of the State of Georgia and any applicable federal law.  In the event of a conflict between any provision of this Note and any federal or Georgia statute, law or regulation in effect as of the date of this Note, the statute, law or regulation shall control to the extent of such conflict and the conflicting provision contained in this Note shall be without effect.  All other provisions of this Note will remain fully effective and enforceable.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

Witness _____

_____ (Seal)
Greg Almond                        -Borrower

_____ (Seal)
Jocelyn Almond                     -Borrower

_____ (Seal)
                                   -Borrower

_____ (Seal)
                                   -Borrower

WITHOUT RECOURSE, PAY TO THE ORDER OF
ALLIANCE FUNDING COMPANY, A DIVISION OF SUPERIOR BANK, FSB
SUNSHINE MORTGAGE CORPORATION

BY _____

THOMAS M. RAUSCH - ASSISTANT SECRETARY

Pay to the order of
without recourse
Alliance Funding Company,
a Division of Superior Bank, FSB
By: _____
Angelina Levy
Assistant Vice President

FILED

RETURN TO: REturn to:
Ward & Teasley, P. C.
5775-D Peachtree Dunwoody Rd., Ste 175
Atlanta, GA 30342
S-02-53

FEB 22 | 00 PM '95

DOUGLAS CO. COURTS
JANE C. WILLIAMS, CLK

GEORGIA INTANGIBLE RECORDING TAX PAID [Space Above This Line For Recording Data]

$ 208.50 _____ Date: 2/21/95

JANE C. WILLIAMS, OSC

# DEED TO SECURE DEBT

THIS DEED TO SECURE DEBT ("Security Instrument") is given on February 8 _____, 199 5 . The grantor is Greg Almond and Jocelyn Almond _____ ("Borrower"). This Security Instrument is given to Sunshine Mortgage Corporation _____, grantee, which is organized and existing under the laws of State of Georgia , and whose address is _____ P O Box 9274, Marietta, GA 30065 _____ ("Lender"). Borrower owes Lender the principal sum of **Sixty Nine Thousand Three Hundred and No/100----------------------********************* Dollars (U.S. $ 69,300.00 ). This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides for monthly payments with the full debt, if not paid earlier, due and payable on February 13, 2010 . This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest at the rate set forth in the Note, and all renewals, extensions and modifications of the Note; (b) the payment of all other sums, with interest, advanced under paragraph 6 to protect the security of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For these purposes Borrower does hereby grant and convey to Lender and Lender's successors and assigns, with power of sale, the following described property located in Douglas County, Georgia:

☒ If this box is checked see Schedule A annexed hereto and made a part hereof.

which has the address of 9914 Scarlet Oak Drive _____, Douglasville _____
                              (Street)                                              (City)
Georgia 30135 ("Property Address"):
              (Zip Code)

TO HAVE AND TO HOLD this property unto Lender's successors and assigns, forever, together with all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands subject to any encumbrances of record.

Borrower and Lender covenant and agree as follows:

1.    Payment of Principal, Interest and Other Charges. Subject to paragraph 10 below, Borrower shall promptly pay when due the principal of and interest on the debt evidenced by the Note and any late charges, collection costs and expenses and dishonored check charges as provided in the Note.

2.    Application of Payments. Unless applicable law provides otherwise, Lender will apply each of Borrower's payments under the Note first to accrued and unpaid interest under the Note to the date of payment and the remainder, if any, to the unpaid principal balance under the Note. Any late charges, collection costs and expenses, dishonored check charges and payments made by Lender to enforce the Note and/or to protect Lender's interests under this Security Instrument will be assessed separately.

3.    Prior Deed to Secure Debt; Charges; Liens and Security Titles. Borrower shall pay all taxes, assessments, charges, fines and impositions attributable to the Property which may attain priority over this Security Instrument, and leasehold payments or ground rents, if any. Borrower shall pay these obligations on time directly to the person owed payment. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this paragraph, and receipts evidencing such payments.

GA 1ST/2ND FIXED RATE DEED TO SECURE DEBT                    Page 1 of 6                                    DT003FD.GAF
[NO PPP] - GENERIC (10/27/93)

Borrower shall perform all of Borrower's obligations under any deed to secure debt, mortgage, deed of trust or other security agreement with, creating or having a priority over this Security Instrument, including but not limited to, Borrower's covenant to make payments when due.  Borrower shall promptly discharge any lien or security title which has priority over this Security Instrument (other than a senior deed to secure debt, mortgage, deed of trust or other security agreement approved by Lender at the time of origination of this Security Instrument and with respect to which Borrower complies with the provisions of the immediately preceding sentence) unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien or security title in a manner acceptable to Lender;  (b) contests in good faith the lien or security title  by, or defends against enforcement of the lien or security title in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien or security title ; or (c) secures from the holder of the lien or security title an agreement satisfactory to Lender subordinating the lien or security title to this Security Instrument.  If Lender determines that any part of the Property is subject to a lien or security title which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien or security title.  Borrower shall satisfy the lien or security title or take one or more of the actions set forth above within 10 days of the giving of notice.

4.      Hazard or Property Insurance.  Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage" and any other hazards, including floods or flooding, for which Lender requires insurance.  This insurance shall be maintained in the amounts and for the periods that Lender requires, not to exceed the full replacement cost of the buildings and improvements on the property. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's approval  which shall not be unreasonably withheld.  If Borrower fails to  maintain coverage described above, Lender may, at Lender's option, obtain coverage to protect Lender's rights in the Property in accordance with paragraph 6.

All insurance policies and renewals must be acceptable to Lender and must include a standard mortgage clause in favor of and in a form acceptable to Lender.  Lender shall have the right to hold the policies and renewals.  If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices.  In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender.  Lender may make proof of  loss if not made promptly by Borrower.

Unless Lender and Borrower otherwise agree in writing, insurance proceeds shall be applied to restoration or repair of the Property damaged, if the restoration or repair is economically feasible and Lender's security is not lessened.  If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower.  If Borrower abandons the Property, or does not answer within 30 days a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may collect the insurance proceeds.  Lender may use the proceeds to repair or restore the Property or to pay sums secured by this Security Instrument,
whether or not then due.  The 30-day period will begin when the notice is given.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraph 1 or change the amount of the payments.  If under paragraph 17 the Property is acquired by Lender, Borrower's right to any insurance policies and proceeds resulting from damage to the Property prior to the acquisition shall pass to Lender to the extent of the sums secured by this Security Instrument immediately prior to the acquisition.

5.      Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds; Condominiums; Planned Unit Developments. Unless Borrower's loan application and Lender's loan approval provided that the Property was not required to be occupied as Borrower's principal residence, Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least 1 year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.  Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate, or commit waste on the Property.  Borrower shall not permit, or be alleged to have permitted, the Property to be used in connection with any illegal activity.  In that regard, Borrower shall be in default if any forfeiture action or proceeding, whether civil or criminal, is begun that in Lender's good faith judgment could result in forfeiture of the Property or otherwise materially impair the security title created by this Security Instrument or Lender's security interest.  Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease.  If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

GA 1ST/2ND FIXED  RATE  DEED TO SECURE DEBT       Page 2 of 6                                                 DT003FB.OAF
[NO PPP] - GENERIC (10/27/93)

BOOK  924 PAGE  320

If this Security Instrument is on a unit in a condominium or a planned unit development, Borrower shall perform all of Borrower's obligations under the declaration or covenants creating or governing the condominium or planned unit development, the by-laws and regulations of the condominium or planned unit development and constituent documents.

6.    **Protection of Lender's Rights in the Property.**  If Borrower fails to perform the covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture or to enforce laws or regulations), then Lender may do and pay for whatever is necessary to protect the value of the Property and Lender's rights in the Property.  Lender's actions may include paying any sums secured by a lien or security title which has priority over this Security Instrument, paying insurance premiums, appearing in court, paying reasonable attorneys' fees and entering on the Property to make repairs.  Although Lender may take action under this paragraph 6, Lender does not have to do so.

Any amounts disbursed by Lender under this paragraph 6 shall become additional debt of Borrower secured by this Security Instrument.  Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the rate set forth in the Note if permitted by law or, if not, at the highest lawful rate and shall be payable, together with such interest, upon notice from Lender to Borrower requesting payment.

7.    **Inspection.**  Lender or its agent may make reasonable entries upon and inspections of the Property.  Lender shall give Borrower notice at the time of or prior to an inspection specifying reasonable cause for the inspection.

8.    **Condemnation.**  The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender and applied to the amount secured by this Security Instrument, subject to the terms of any senior mortgage, deed to secure debt or other security instrument.  Any excess will be paid to the persons legally entitled to it.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the condemnor offers to make an award or settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the proceeds, at its option, either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraph 1 or change the amount of such payments.

9.    **Borrower Not Released; Forbearance By Lender Not a Waiver.**  Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successors in interest.  Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest.  Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

10.    **Successors and Assigns Bound; Joint and Several Liability; Co-Signers.**  The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower subject to the provisions of paragraph 17(B).  Borrower's covenants and agreements shall be joint and several.  Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent and without thereby impairing that Borrower's obligations and liability hereunder.

11.    **Loan Charges.**  If the loan secured by this Security Instrument is subject to a law or regulation which sets maximum loan charges, and that law or regulation is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the loan exceed the permitted limits, then: (a) any such interest and/or other loan charges shall be reduced by the amount necessary to reduce the interest and/or other loan charges to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower.  Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower.  If a refund reduces principal, the reduction will be treated as a partial prepayment.

GA 1ST/2ND FIXED RATE  DEED TO SECURE DEBT                 Page 3 of 6                                    DT003PB.GAP
[NO PPP] - GENERIC (10/27/93)

BOOK  924 PAGE  321

In the event the loan secured by this Security Instrument is prepaid either voluntarily or as a result of enforcement action, the Borrower may become entitled to a refund of some of the prepaid finance charge and/or other loan charges, if any, paid by the Borrower or on the Borrower's behalf to the Lender at the time of the origination of the loan secured by this Security Instrument. The refund will be made if, at the time of the prepayment, applicable law or regulation provides that (a) such prepaid finance charge and/or other loan charges are required to be included in the calculation of the maximum permissible periodic interest rate and/or maximum allowable loan charges, without spreading the effect of such prepaid finance charge and/or loan charges over the full original scheduled term of the loan when determining the effective periodic interest rate on the loan (the "Calculation"), and (b) the effective periodic interest rate resulting from the Calculation exceeds the maximum permissible rate. Any such refund will be made as and to the extent provided in the first paragraph of this paragraph 11.

12.    Notices. Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any other address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph 12.

13.    Governing Law; Severability. This Security Instrument shall be governed by federal law, Georgia law and any local law that applies in the place in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

14.    Borrower's Copy. Borrower acknowledges receipt of photocopy or a conformed copy of the Note and of this Security Instrument.

15.    Sale of Note; Change of Loan Servicer. The Note or a partial interest in the Note (together with this Security Instrument) may be sold one or more times without prior notice to Borrower. A sale may result in a change in the entity (known as the "Loan Servicer") that collects monthly payments due under the Note and this Security Instrument. There also may be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change in accordance with paragraph 12 above and applicable law. The notice will state the name and address of the new Loan Servicer and the address to which payments should be made. The notice will also contain any other information required by applicable law.

16.    Hazardous Substances. Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 16, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 16, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

17.    Lender's Rights if Borrower Fails to Keep Promises and Agreements. If any of the events or conditions described in subparagraphs (A), (B), (C), (D), (E) or (F) of this Paragraph 17 shall occur, Lender may require that Borrower pay immediately the entire amount remaining unpaid under the Note and this Security Instrument. This requirement will be called "Immediate Payment in Full."

If Lender requires Immediate Payment in Full, Lender may invoke the power of sale granted by Borrower and any other remedies permitted by applicable law. Borrower appoints Lender the agent and attorney-in-fact for Borrower to exercise the power of sale. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 17 including, but not limited to, reasonable attorneys' fees, including attorneys' fees for bankruptcy proceedings brought by or against Borrower, in the

OA 1ST/2ND FIXED RATE DEED TO SECURE DEBT
[NO PPP] - GENERIC (10/27/93)

Page 4 of 6

DT003FB.OAP

BOOK 924 PAGE 322 

amount of fifteen percent (15%) of the principal and interest owing on the Note or on this Security Instrument if permitted by law, and costs of title evidence.

If Lender invokes the power of sale, Lender shall give a copy of a notice of sale to Borrower in the manner provided in paragraph 12 and shall give notice of sale by public advertisement for the time and in the manner prescribed by applicable law. Lender, without further demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Lender determines. Lender or its designee may purchase the Property at any sale.

Lender shall convey to the purchaser indefeasible title to the Property, and Borrower hereby appoints Lender Borrower's agent and attorney-in-fact to make such conveyance. The recitals in the Lender's deed shall be prima facie evidence of the truth of the statements made therein. Borrower covenants and agrees that Lender shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees in the amount of fifteen percent (15%) of the principal and interest owing on the Note or on this Security Instrument if permitted by law; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it. The power and agency granted are coupled with an interest, are irrevocable upon death or otherwise and are cumulative to the remedies for collection of debt as provided by law.

If the Property is sold pursuant to this paragraph 17, Borrower, or any person holding possession of the Property through Borrower, shall immediately surrender possession of the Property to the purchaser at the sale. If possession is not surrendered, Borrower or such person shall be a tenant holding over and may be dispossessed in accordance with applicable law.

Lender may require Immediate Payment In Full under this Paragraph 17, if:

(A)     Borrower fails to make any payment required by the Note or this Security Instrument when it is due; or

(B)     Except in those circumstances in which federal law otherwise provides, all or any part of the Property, or any right in the Property, is sold or transferred without Lender's prior written consent (or, if Borrower is not a natural person, if a beneficial interest in Borrower is sold or transferred); or

(C)     On application of Lender, two or more insurance companies licensed to do business in the State in which the Property is located refuse to issue policies insuring the buildings and improvements on the Property; or

(D)     Borrower fails to make any payment required by any senior deed to secure debt, mortgage or other security instrument encumbering or affecting the Property or Borrower fails to keep any other promise or agreement in any senior deed to secure debt, mortgage or other security instrument encumbering or affecting the Property; or

(E)     Borrower fails to keep any other promise or agreement in this Security Instrument within the time set forth, or if no time is set forth in this Security Instrument, then within the time set forth in the notice sent to Borrower by Lender; or

(F)     Any representation made or information given to Lender by Borrower in connection with Borrower's application for the loan evidenced by the Note is false or misleading in any material respect.

18.     **Assignment of Rents; Appointment of Receiver; Lender in Possession.** As additional security hereunder, Borrower hereby assigns to Lender the rents of the Property to the extent that rents are not being collected by the holder of an assignment of rents which has priority over this Security Instrument, provided that prior to acceleration under paragraph 17 hereof or abandonment of the Property, Borrower shall have the right to collect and retain such rents. Upon acceleration under paragraph 17 or abandonment of the Property, Lender (in person, by agent, or by judicially appointed receiver) shall be entitled to enter upon, take possession of and manage the Property and to collect the rents of the Property including those past due. Any rents collected by Lender or the receiver shall be applied first to payment of the costs of management of the Property and collection of rents, including, but not limited to, receiver's fees, premiums on receiver's bonds, and reasonable attorneys' fees in the amount of fifteen percent (15%) of the principal and interest owing on the Note or on this Security Instrument if permitted by law, and then to the sums secured by this Security Instrument.

19.     **Release.** Upon payment of all sums secured by this Security Instrument, Lender shall cancel this Security Instrument without charge to Borrower. Borrower shall pay any recordation costs.

20.     **Waiver of Homestead.** Borrower waives all rights of homestead exemption in the Property.

GA 1ST/2ND FIXED RATE DEED TO SECURE DEBT
[NO PPP] - GENERIC (10/27/93)

Page 5 of 6

BTO03PB.OAP

BOOK 924 PAGE 323

21.    **Assumption Not a Novation.**   Lender's acceptance of an assumption of the obligations of this Security Instrument and the Note, and any release of Borrower in connection therewith, shall not constitute a novation.

22.    **Security Deed.**   This conveyance is to be construed under the existing laws of the State of Georgia as a deed passing title, and not as a mortgage, and is intended to secure the payment of all sums secured hereby.

23.    **Riders to this Security Instrument.**   If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants and agreements of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument.

[Check applicable box(es)]

☐ Adjustable Rate Rider          ☐ Condominium Rider          ☐ 1-4 Family
                                                                Rider

☐ Graduated Payment Rider        ☐ Planned Unit               ☐ Biweekly
                                   Development Rider             Payment
                                                                Rider

☐ Other(s) [(specify)            ☐ Rate Improvement           ☐ Second
_____                    Rider                        Home Rider


REQUEST FOR NOTICE OF DEFAULT AND
_____FORECLOSURE UNDER SUPERIOR DEEDS TO SECURE DEBT, MORTGAGES_____
OR DEEDS OF TRUST

Borrower and Lender request the holder of any deed to secure debt, mortgage, deed of trust or other encumbrance which has priority over this Security Instrument to give notice to Lender, at Lender's address set forth on page one of this Security Instrument, or at any other address for notice provided by Lender to such holder, of any default under any such superior instrument or encumbrance and of any sale or other action to enforce such superior instrument or encumbrance.

BORROWER ACCEPTS AND AGREES to the terms and covenants contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.   IN WITNESS WHEREOF, Borrower has signed and sealed this Security Instrument.

Signed, sealed and delivered
in the presence of:

_____               _____ (Seal)
Unofficial Witness                      Greg Almond           --Borrower--

_____               _____ (Seal)
Notary Public                           Jocelyn Almond        --Borrower--

My Commission Expires                  _____ (Seal)
March 5, 1996.                                                --Borrower--

                                       _____ (Seal)
                                                             --Borrower--


GA 1ST/2ND FIXED  RATE  DEED TO SECURE DEBT          Page 6 of 6                              DT003.FB.GAP
[NO PPP] - GENERIC (10/27/93)

Exhibit    "A"

All that tract or parcel  of land lying and being in Land Lot
25, 1st District, 5th Section, Douglas County, Georgia, being
part  of  Lot  31, Unit II, Oakwood Village, as shown on plat
recorded in Plat Book  10,  Page 286, Douglas County records,
and being more particularly described as follows:

BEGINNING at an iron pin on the northeasterly side of Scarlet
Oak  Drive  49.0  feet southeasterly from the intersection of
the northeasterly side of Scarlet Oak Drive and easterly side
of Oakwood Drive, as measured along the northeasterly side of
Scarlet Oak Drive; running thence North 50 degrees 59 minutes
East 70.1 feet to an  iron  pin;  thence  North 56 degrees 29
minutes West 2.0 feet to an iron pin on  the  southeasterly
line of  Lot  32, said unit and subdivision; thence North 51
degrees 56 minutes East  along the southeasterly line of said
Lot 32 167.7 feet to an iron pin; thence  South 54 degrees 25
minutes  East  40.7  feet  to  an  iron  pin; thence South 49
degrees 06 minutes  East  34.5  feet  to  an  iron pin at the
northwesterly corner of Lot 30, said unit  and  subdivision;
thence    South   47   degrees   20  minutes  West  along  the
northwesterly line of  said  Lot 30 184.5 feet to an iron pin
on  the  northeasterly  side of Scarlet  Oak  Drive;  thence
northwesterly  along  the  northeasterly  side of Scarlet Oak
Drive, and following  the curvature thereof, 110.0 feet to an
iron pin and the point of beginning.

RECORDED 3-10 1995
JANE C. WILLIAMS, CLERK
SUPERIOR COURT, DOUGLAS CO

BOOK  924 PAGE  325

PLEASE RECORD AND RETURN TO: Sunshine Mortgage Corp., P.O. Box 9274
Marietta, GA 30065, ATTN: Karen Owens - Document Control

FILED

LN#

*Alliance Funding*

ASSIGNMENT

Jun  2 20 PM '95

DOUGLAS CO. COURT..
JANE C. WILLIAMS, CLK

FOR VALUE RECEIVED, SUNSHINE MORTGAGE CORPORATION* hereby sells,

assigns, transfers, sets over and conveys unto ALLIANCE FUNDING COMPANY, a DIVISION
of SUPERIOR BANK, FSB

1899 POWERS FERRY ROAD MARIETTA, GA 30067        its successors or assigns,

that certain Deed to Secure Debt, dated FEBRUARY 8          , 19 95 , executed

by   GREG ALMOND AND JOCELYN ALMOND                                    , filed

and recorded in Deed Book   924   , Page   319   , in the office of

the Superior Court of    DOUGLAS              , County, GEORGIA.

together with the real property therin described, and also the indebtedness

described in said deed, and secured thereby, the notes evidencing said

indebtedness having this day been transferred and assigned to the said

ALLIANCE FUNDING COMPANY , a DIVISION of SUPERIOR BANK FSB together with

all rights, title, and interest in and to the said Deed, the property

therein described and the indebtedness thereby secured, and the said

ALLIANCE FUNDING COMPANY                                        is

hereby subrogated to all of rights, powers, privileges and securities

vested in  SUNSHINE MORTGAGE CORPORATION under and by virtue of the afore

said Deed to Secure Debt.

Witness my hand and seal at Atlanta, Georgia, this

the   18th  day of   FEBRUARY            , 19  95   .

signed, sealed and delivered
in the presence of:                              SUNSHINE MORTGAGE CORPORATION

WITNESS                                          BY:
                                                      Sandra L. Tasker
NOTARY PUBLIC                                         Assistant Secretary

MY COMMISSION EXPIRES:    Notary Public, Cobb County, Georgia
                          My Commission Expires April 22, 1997
(NOTARY SEAL)

PUBLIC

*1415 BARCLAY CIRCLE, SUITE B
MARIETTA, GEORGIA 30060

RECORDED 6-20  19 95

JANE C. WILLIAMS, CLERK
SUPERIOR COURT, DOUGLAS CO

BOOK   940 PAGE  149



JA2

Aug 7  4 06 PM '95

DOUGLAS CO. COURTS
JANE C. WILLIAMS, CLK

## TRANSFER AND ASSIGNMENT

For valuable consideration paid, receipt of which is hereby acknowledged, Alliance
Funding Company, a Division of Superior Bank FSB, hereby assigns to:

LASALLE NATIONAL BANK AS TRUSTEE FOR AFC MORTGAGE LOAN ASSET BACKED CERTIFICATES

SERIES 1995-3, UNDER THE POOLING AND SERVICING AGREEMENT DATED AS OF JUNE 1, 1995

135 SOUTH LASALLE ST. SUITE 200 CHICAGO IL. 60603

All of its right, title and interest in and to that certain deed to secure debt, together
with the note it was given to secure, executed and delivered by GREG ALMOND AND
  JOCELYN ALMOND, 9914 SCARLET OAK DRIVE, DOUGLASVILLE, GA  30135

dated ____FEBRUARY 8, 1995____ and recorded in Book ____924____ Page
____319____ of the ____DOUGLAS____ County, Georgia, office of the
Clerk of Superior Court on the ____10____ day of ____March____, 19 95.

Signed, sealed and delivered this ____17TH____ day of ____FEBRUARY____, 19 95.

Alliance Funding Company
a Division of Superior Bank FSB

_____
Unofficial Witness
SHIRLEY HERNANDEZ

BY: _____
Angelina V. Levy
Assistant Vice President

_____
Alexsandra Piccino, Notary Public
My Commission Expires Jan. 14, 1999

To the Clerk:  Upon recordation return to:                    (Corporate Seal)

RETURN TO:

Alliance Funding Company
a Division of Superior Bank FSB
135 Chestnut Ridge Road
Montvale, New Jersey 07645
Attn:  Recorded Documents Dept.

RECORDED 8·31  19 95
JANE C. WILLIAMS, CLERK
SUPERIOR COURT, DOUGLAS CO

BOOK   951 PAGE  800

GA TRANSFER AND ASSIGNMENT - AFC TO INVESTOR (7/8/94)                    ASG008A.GAM

RETURN TO:

Doc ID: 000550240005 Type: GLR
Filed: 06/22/2004 at 12:27:00 PM
Fee Amt:    Page 1 of 5
Douglas County Georgia
Cindy Chaffin Clerk Superior Court
BK **1981** PG **790-794**

RECORD AND RETURN TO:
HANOVER CAPITAL PARTNERS LTD.
POST OFFICE BOX 3980
EDISON, NJ 08818-3980

BK $\frac{924}{924}$ / Pg $\frac{319}{319}$

Deal: EMC- Print EMC

**LaSalle Bank National Association, formerly known as LaSalle
National Bank, in its capacity as indenture trustee under that
certain Sale and Servicing Agreement dated June 1, 1995 among
AFC Trust Series 1995-3, as Issuer, Superior Bank FSB, as Seller
and Servicer, and LaSalle Bank National Association, as Indenture
Trustee, AFC Mortgage Loan Asset Backed Notes, Series 1995-3,
and any amendments thereto,**

(Assignor)

and

EMC MORTGAGE CORPORATION

(Assignee)

ASSIGNMENT OF Security Deed

DATED: 15th    February 2002
PROPERTY ADDRESS: 9914  SCARLET OAK DR, DOUGLASVILL

COUNTY and STATE: Douglas, GA
NEW YORK SECTION:
BLOCK:
LOT:

PREPARED BY :

RCG, Inc.
505 A San Marin Drive, #300
Novato, California 94945
415-898-7200
EMC- Print EMC ASGN1 /

BK    PG

1981  0791

Page 2

## Assignment of Security Deed

For Value Received, LaSalle Bank National Association, formerly known as LaSalle National Bank, in its capacity as indenture trustee under that certain Sale and Servicing Agreement dated June 1, 1995 among AFC Trust Series 1995-3, as Issuer, Superior Bank FSB, as Seller and Servicer, and LaSalle Bank National Association, as Indenture Trustee, AFC Mortgage Loan Asset Backed Notes, Series 1995-3, and any amendments thereto,, the undersigned holder of a(n) Security Deed  (herein 'Assignor') whose address is C/O EMC MORTGAGE CORPORATION, 909 Hidden Ridge Drive, Suite 200, Irving, TX 75038, does hereby grant, sell, assign, transfer and convey, without recourse unto EMC MORTGAGE CORPORATION (herein 'Assignee') whose address is 909 Hidden Ridge Drive, Suite 200, Irving, TX 75038, without recourse, representation or warranty, all beneficial interest under a certain Security Deed dated 2/8/1995, made and executed by Borrower(s): GREG ALMOND AND JOCELYN ALMOND in which Security Deed is of record in:

| | | |
|---|---|---|
| Book/Volume: | 924 | Page No.: 319 |
| Instr/Ref: | | |
| Parcel/Tax ID#: | | |
| Township/Borough: | | |
| Trustee (if DOT): | | |
| Original Loan Amount: | $69,300.00 | |
| Original Lender: | **SUNSHINE MORTGAGE CORPORATION** | |

which was recorded on 2/22/1995 in Douglas (County or Town, whichever is applicable) in the state of GA, together with the note or bond secured thereby, the note or bond evidencing said indebtedness having this date been transferred together with Assignor's right, title and interest in and to said Mortgage, all without recourse, or warranty, the property herein described and the indebtedness thereby secured.

All other existing legal or equitable rights, interests and remedies in or with respect to the Mortgage and/or the Note and/or the proceeds thereof, including, but not limited to, escrow deposits, existing title insurance policies and hazard insurance policies, as well as causes of action and judgements related thereto.

1981 0792

Page 3

TO HAVE AND TO HOLD the same unto Assignee, its successors and assigns, forever, subject only to the terms and conditions of the above-described Security Deed.

IN WITNESS WHEREOF, Assignor has caused this Assignment to be executed and delivered, effective February 15th, 2002.

Witness(es):

**LaSalle Bank National Association, formerly known as LaSalle National Bank, in its capacity as indenture trustee under that certain Sale and Servicing Agreement dated June 1, 1995 among AFC Trust Series 1995-3, as Issuer, Superior Bank FSB, as Seller and Servicer, and LaSalle Bank National Association, as Indenture Trustee, AFC Mortgage Loan Asset Backed Notes, Series 1995-3, and any amendments thereto,**

**By Its Attorney In Fact EMC Mortgage Corporation**

By:

Michaela Brychoova

Name: Kris MacKay, Assistant Vice President
[Power of Attorney   recorded 6/20/2003 in DOUGLAS County, GA in book 35236 at page 235 as file # 20030210601]

State of California
County of Marin

On February 27th, 2004, before me, the undersigned Notary Public in and for said State, personally appeared Kris MacKay, Assistant Vice President of EMC Mortgage Corporation (Attorney-in-fact for LaSalle Bank National Association, formerly known as LaSalle National Bank, in its capacity as indenture trustee under that certain Sale and Servicing Agreement dated June 1, 1995 among AFC Trust Series 1995-3, as Issuer, Superior Bank FSB, as Seller and Servicer, and LaSalle Bank National Association, as Indenture Trustee, AFC Mortgage Loan Asset Backed Notes, Series 1995-3, and any amendments thereto, according to a Power of Attorney), known to me (or proved to me on the basis of satisfactory evidence) to be the person whose name is subscribed to the within instrument who acknowledged that he/she is the authorized Attorney-In-Fact for LaSalle Bank National Association, formerly known as LaSalle National Bank, in its capacity as indenture trustee under that certain Sale and Servicing Agreement dated June 1, 1995 among AFC Trust Series 1995-3, as Issuer, Superior Bank FSB, as Seller and Servicer, and LaSalle Bank National Association, as Indenture Trustee, AFC Mortgage Loan Asset Backed Notes, Series 1995-3, and any amendments thereto, and whose address is C/O EMC MORTGAGE CORPORATION, 909 Hidden Ridge Drive, Suite 200, Irving, TX 75038, and who acknowledged to me that he/she executed the same in his/her authorized capacity, and that by his/her signature on the instrument the person or the entity on behalf of which the person acted, executed the instrument.

Witness My Hand and Official Seal.

Notary Public: M. Borjon
My commission expires:  7/29/2005

M. BORJON
COMM. #1315671
NOTARY PUBLIC-CALIFORNIA
MARIN COUNTY
My Comm. Expires July 29, 2005

1981  0793

Exhibit  "A"

All that tract or parcel of land lying and being in Land Lot
25, 1st District, 5th Section, Douglas County, Georgia, being
part of Lot 31, Unit II, Oakwood Village, as shown on plat
recorded in Plat Book 10, Page 286, Douglas County records,
and being more particularly described as follows:

BEGINNING at an iron pin on the northeasterly side of Scarlet
Oak Drive 49.0 feet southeasterly from the intersection of
the northeasterly side of Scarlet Oak Drive and easterly side
of Oakwood Drive, as measured along the northeasterly side of
Scarlet Oak Drive; running thence North 50 degrees 59 minutes
East 70.1 feet to an iron pin; thence North 56 degrees 29
minutes West 2.0 feet to an iron pin on the southeasterly
line of Lot 32, said unit and subdivision; thence North 51
degrees 56 minutes East along the southeasterly line of said
Lot 32 167.7 feet to an iron pin; thence South 54 degrees 25
minutes East 40.7 feet to an iron pin; thence South 49
degrees 06 minutes East 34.5 feet to an iron pin at the
northwesterly corner of Lot 30, said unit and subdivision;
thence South 47 degrees 20 minutes West along the
northwesterly line of said Lot 30 184.5 feet to an iron pin
on the northeasterly side of Scarlet Oak Drive; thence
northwesterly along the northeasterly side of Scarlet Oak
Drive, and following the curvature thereof, 110.0 feet to an
iron pin and the point of beginning.

## Schedule I

1981  0794

EMC Loan Number: ▓▓▓▓▓▓

### Assignment of Mortgage

EMC ASGN 1

From: LaSalle Bank National Association, formerly k
To: EMC MORTGAGE CORPORATION
Date Recorded: 1/1/1900
Book Volume:
Page:
Document Number:

### Assignment of Mortgage

IA 1

From: SUNSHINE MORTGAGE  CORPOR
To: ALLIANCE FUNDING COMPANY,
Date Recorded: 6/2/1995
Book Volume: 940
Page: 149
Document Number:

### Assignment of Mortgage

IA 2

From: ALLIANCE FUNDING COMPANY,
To: LASALLE NATIONAL BANK, AS
Date Recorded: 8/7/1995
Book Volume: 951
Page: 800
Document Number:

Prepared by and after Recording
Return to:

| | |
|---|---|
| Name: | Elizabeth Hunter Pitts |
| Firm/Company | PROMMIS SOLUTIONS, LLC |
| Address | ATTN: ASSIGNMENTS |
| Address 2: | 1544 OLD ALABAMA ROAD |
| City, State, Zip: | ROSWELL, GA 30076 |
| Phone: | (800) 275-7171 |

)
)
)
)
)
)
)
)
)
)
)

Doc ID: 003458040004 Type: GLR
Filed: 01/07/2011 at 11:42:00 AM
Fee Amt: $13.00 Page 1 of 4
Douglas County Georgia
RHONDA G PAYNE Clerk Superior Court
BK **2913** PG **100-103**

--------Above This Line Reserved For Official Use Only----------

Assessor's Property Tax Parcel/Account
Number:
EMC #

## ASSIGNMENT OF DEED TO SECURE DEBT

**Name and Address of Assignor:**
EMC Mortgage Corporation whose address is 909 Hidden Ridge Drive, Suite 200, Irving TX 75038

**Name and Address of Assignee:**
The Bank of New York Mellon, FKA The Bank of New York, as successor Trustee to JP Morgan Chase Bank, N.A. as Trustee, FKA Bank One, National Association, as Trustee for Certificateholders of Bear Stearns Asset Backed Securities, Inc., Asset Backed Certificates, Series 2002-2 whose address is 800 State Highway 121 Bypass, Lewisville, TX 75067

        FOR  VALUE  RECEIVED,  the  receipt  and  sufficiency  of  which  is  hereby acknowledged, the undersigned, EMC Mortgage Corporation, "Assignor", whose address is above, does hereby grant, sell, assign, transfer and convey to The Bank of New York Mellon, FKA The Bank of New York, as successor Trustee to JP Morgan Chase Bank,

4

BK 2 9 1 3 PG0 1 0 1

N.A. as Trustee, FKA Bank One, National Association, as Trustee for Certificateholders of Bear Stearns Asset Backed Securities, Inc., Asset Backed Certificates, Series 2002-2, "Assignee," whose address is above, all interest of the undersigned Assignor in and to the following described deed to secure debt:

**Date of Security Deed:** February 8, 1995    **Maturity Date:**    February 13, 2010
**Executed**    by   Greg Almond and Jocelyn Almond
**(Mortgagor(s)):**

**To and in favor of** Sunshine Mortgage Corporation
**(Mortgagee):**

**Filed of Record:** In Book    924    , Page    319    ,
Document/Inst. No.      , in the Office of the Superior Court Clerk
for    Douglas    County, Georgia, on    February 22, 1995    (date).
**Property:**    9914 Scarlet Oak Drive, Douglasville, Georgia 30135
     (As described in the Legal Description attached hereto as Exhibit A.)

**Given:** to secure a certain Promissory Note in the amount   $ 69,300.00.
of

     Together with the note(s) and obligations therein described or referred to, the money due and to become due thereon, with interest, and all rights accrued or to accrue under said Deed to Secure Debt.

     TO HAVE AND TO HOLD the same unto Assignee and unto its successors and assigns forever, subject only to the terms and conditions of the above-described Deed to Secure Debt.

     Assignor is the present holder of the above-described Deed to Secure Debt.

     IN WITNESS WHEREOF, this assignment was executed by the undersigned Assignor on this the 23 day of December , 20 10 .

EMC Mortgage Corporation

Name: Wanda Chapman
Title: Vice President

BK 2 9 I 3 PG0 I 0 2

Signed, Sealed and Delivered
in the presence of:

_____
Witness Name:

_____
Notary Public

My Commission Expires: 9-7-2016

```
┌─────────────────────────────────────────┐
│              DEBRA BROWN                  │
│  Notary Public, State of South Carolina   │
│    My Commission Expires 09-07-2016       │
└─────────────────────────────────────────┘
```

(Seal)

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

IN RE:                                              Case No. 13-68985-MGD

GREGORY LAMAR ALMOND,                 Chapter 13

            Debtor.

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify under penalty of perjury that I am, and at all times hereinafter mentioned, was more than 18 years of age, and that on the August 31, 2016, I served a copy of **Notice of Hearing and Motion for Relief from the Automatic Stay and Co-Debtor Stay Declaration in Support of Motion for Relief from Stay** which was filed in this bankruptcy matter on the August 31, 2016, in the manner indicated:

**The following parties have been served via e-mail**:

David G. Poston                                   Mary Ida Townson
bknotice@cochranfirmbk.com

**The following parties have been served via U.S. First Class Mail**:

Gregory Lamar Almond                        Jocelyn Almond
9914 Scarlet Oak Drive                        9914 Scarlet Oak Drive
Douglasville, GA 30135                        Douglasville, GA 30135

**I CERTIFY UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT.**

Dated: August 31, 2016                        /s/ Brian K. Jordan
                                                          Brian K. Jordan, Bar No.: 113008
                                                          Attorney for Movant
                                                          Aldridge Pite, LLP
                                                          Fifteen Piedmont Center
                                                          3575 Piedmont Road, N.E., Suite 500
                                                          Atlanta, GA 30305
                                                          Phone: (404) 994-7400
                                                          Fax: (888) 873-6147
                                                          Email: bjordan@aldridgepite.com